773 N.W.2d 349 (2009)
278 Neb. 564
STATE of Nebraska ex rel. Patrick REED, appellant,
v.
STATE of Nebraska GAME AND PARKS COMMISSION et al., appellees.
No. S-08-1261.
Supreme Court of Nebraska.
September 18, 2009.
*351 Richard L. Rice and Mathew T. Watson, of Crosby Guenzel, L.L.P., Lincoln, for appellant.
Jon Bruning, Attorney General, Jody Gittins, and Michelle Weber for appellees State of Nebraska Game and Parks Commission, Rex Amack, and Carey Grell.
Kile W. Johnson, of Johnson, Flodman, Guenzel & Widger, Stephen D. Mossman, of Mattson, Ricketts, Davies, Stewart & Calkins, Lincoln, and Bonnie J. Hostetler, of Nebraska Public Power District, Columbus, for appellee Nebraska Public Power District.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
*352 WRIGHT, J.

NATURE OF CASE
Patrick Reed sought a writ of mandamus to compel the Nebraska Game and Parks Commission (NGPC) and its officers to prohibit the Nebraska Public Power District (NPPD) from constructing a power transmission line across Twin Lakes Wildlife Management Area (Twin Lakes). Reed also sought injunctive relief and declaratory judgments to prevent construction of the transmission line. The Seward County District Court found that Reed did not have standing and dismissed the petition without leave to amend. Reed appeals.

SCOPE OF REVIEW
On a question of law, an appellate court reaches a conclusion independent of the court below. Lamar Co. v. City of Fremont, 278 Neb. 485, 771 N.W.2d 894 (2009); Pierce v. Douglas Cty. Civil Serv. Comm., 275 Neb. 722, 748 N.W.2d 660 (2008).
Standing is a jurisdictional component of a party's case, because only a party who has standing may invoke the jurisdiction of a court; determination of a jurisdictional issue which does not involve a factual dispute is a matter of law which requires an appellate court to reach its conclusions independent from a trial court. Lamar Co., supra; In re Estate of Dickie, 261 Neb. 533, 623 N.W.2d 666 (2001).
The defect of standing is a defect of subject matter jurisdiction. Citizens Opposing Indus. Livestock v. Jefferson Cty., 274 Neb. 386, 740 N.W.2d 362 (2007).
If a motion to dismiss for lack of jurisdiction is filed at the pleadings stage and the motion challenges the sufficiency of the complaint to invoke the court's jurisdiction, then the district court will review the pleadings to determine whether there are sufficient allegations to establish the plaintiff's standing. Id. Aside from factual findings, which are reviewed for clear error, the granting of a motion to dismiss for lack of subject matter jurisdiction under Neb. Ct. R. Pldg. § 6-1112(b)(1) is subject to de novo review. Citizens Opposing Indus. Livestock, supra.

FACTS
Reed owns land and resides in Seward County, Nebraska. He regularly uses Twin Lakes, a wildlife management area that is also located in Seward County. Twin Lakes has been designated as a wildlife management area by NGPC and is subject to its control and protection pursuant to Neb.Rev.Stat. §§ 37-328 to 37-336 (Reissue 2008).
The Twin Lakes area contains a prairie wildflower known as the Western Prairie Fringed Orchid, which has been identified as a "threatened and/or endangered species" by the U.S. Department of the Interior and the State of Nebraska. The orchid is known to exist in seven states, including Nebraska, and one Canadian province. It is found in remnant native prairies and meadows, such as those that exist at Twin Lakes, and may go dormant for many years. NGPC and others have observed the orchid at Twin Lakes.
As the state agency charged with conservation and protection of state resources, NGPC has the authority to prevent the destruction of threatened and endangered species. NGPC also has the authority to grant easements across real estate under its control, including Twin Lakes, pursuant to § 37-330. NPPD has several easements across Twin Lakes that were granted in 1937 and 1968 to maintain an 115-kV transmission line across Twin Lakes.
*353 NPPD has plans to begin an electric transmission line project known as the Electric Transmission Reliability Project for East-Central Nebraska (ETR Project). The ETR Project involves the construction of approximately 80 miles of 345-kV transmission line between Columbus, Nebraska, and Lincoln, Nebraska. The preferred route for this project crosses Twin Lakes. Construction of the ETR Project will require excavation 25 feet deep and large enough for a base with a 7-foot diameter to accommodate the 100- to 165-foot poles which will support the transmission line. Reed alleges that this excavation will threaten the habitat of the orchid and will negate the primary purpose of Twin Lakes as a wildlife management area. He also claims that the ETR Project exceeds the scope of NPPD's existing easements.
Reed filed a petition in Seward County District Court alleging three causes of action. First, he sought a writ of mandamus to compel NGPC and its director to perform their statutory duties to protect Twin Lakes from harmful and unlawful intrusions by NPPD. Second, Reed sought to enjoin NGPC from issuing a new easement to NPPD for the ETR Project and from continuing the ETR Project with or without a sufficient easement. Finally, Reed requested a declaratory judgment that NPPD's existing easements were insufficient for the 345-kV transmission and that any easement for the construction of the ETR Project would destroy the habitat of the orchid and negate the primary purpose of Twin Lakes' designation as a wildlife management area.
The district court concluded that Reed did not have standing because he had not suffered any special injury peculiar to himself aside from and independent of the general injury to the public. It opined that while Reed's interests may very well involve matters of great public concern, such interests did not rise to the level described by this court in Cunningham v. Exon, 202 Neb. 563, 276 N.W.2d 213 (1979). Accordingly, the court dismissed the action.

ASSIGNMENT OF ERROR
Reed alleges the district court erred in determining that he lacked standing to bring this action.

ANALYSIS
The issue is whether the district court erred in dismissing Reed's petition. The court concluded that Reed lacked standing because he had not suffered any special injury peculiar to himself aside from and independent of the general injury to the public. Noting that an exception to the general rule exists when the case involves a matter of "`great public concern,'" the court found that the issue of potential harm to the natural resources and aesthetic beauty at Twin Lakes did not constitute a matter of great public interest and concern such that Reed should be granted standing.
Standing is the legal or equitable right, title, or interest in the subject matter of the controversy which entitles a party to invoke the jurisdiction of the court. Myers v. Nebraska Invest. Council, 272 Neb. 669, 724 N.W.2d 776 (2006). Indeed, as an aspect of jurisdiction and justiciability, standing requires that a litigant have such a personal stake in the outcome of a controversy as to warrant invocation of a court's jurisdiction and justify the exercise of the court's remedial powers on the litigant's behalf. Lamar Co. v. City of Fremont, 278 Neb. 485, 771 N.W.2d 894 (2009). Generally, in order to have standing to bring suit to restrain an act of a municipal body, the persons seeking such action must show some special injury peculiar to themselves aside from a general *354 injury to the public, and it is not sufficient that they have merely a general interest common to all members of the public. Id.
In the 19th and early 20th centuries, this court discussed an exception to the requirement that a litigant have a personal stake in the outcome of the controversy. We stated that if the question was one of a public right and the object of mandamus was to procure the enforcement of a public duty, the people were regarded as the real party in interest. In that situation, the individual bringing the action, the relator, did not need to show that he had any legal or special interest in the result. City of Crawford v. Darrow, 87 Neb. 494, 127 N.W. 891 (1910); Van Horn v. State, 51 Neb. 232, 70 N.W. 941 (1897); State, ex rel., Ferguson v. Shropshire, 4 Neb. 411 (1876). It was sufficient to show that the relator was a citizen and therefore interested in the execution of the laws. Id.
This exception existed only in rare cases. A public right was found to exist in State, ex rel., Ferguson, supra, when a resident of the sixth ward of the city of Omaha, Nebraska, filed an application for a mandamus to require a justice of the peace who was elected to the sixth ward to locate his office in the sixth ward rather than in the fourth ward. We allowed the mandamus, determining that requiring an elected official to discharge the duties of his office in the ward in which he was elected was a legitimate general interest.
Likewise, in The State v. Stearns, 11 Neb. 104, 7 N.W. 743 (1881), a resident of Nance County, Nebraska, alleged that the newly appointed special commissioners responsible for counting votes to determine the location of the Nance County seat threw out a large number of votes cast in favor of Genoa and proclaimed Fullerton to be the county seat. The relator sought a mandamus to compel the commissioners to count all votes cast. Underscoring the importance of counting votes and noting that the relator was a citizen and interested in execution of the laws, we concluded that the relator had standing and awarded mandamus.
We clarified the exception to the general standing rule in Cunningham v. Exon, 202 Neb. 563, 276 N.W.2d 213 (1979), which presented the issue of whether the plaintiff had standing to challenge the accuracy of a constitutional amendment adopted by the electors of Nebraska. The plaintiff alleged that public officials of the State of Nebraska had erroneously omitted a portion of the Nebraska Constitution when it amended a section regarding state contracts for special education services from secular institutions. The defendants argued that the plaintiff did not have standing. They relied on other jurisdictions which held that in order to maintain an action for a declaratory judgment as to a legislative enactment, a plaintiff must show some special injury peculiar to himself aside from and independent of the general public. The action could be brought if the legislative enactment involved the expenditure of public funds or involved an illegal increase in the burden of taxation.
We recognized an exception to the standing requirement when the matter involved a great public concern that could otherwise go unchallenged. We concluded that an amendment to the Nebraska Constitution raised issues of great public interest and concern. If such an amendment could not be challenged by a citizen and taxpayer unless he had a special pecuniary interest different from the public generally, it was entirely possible that no one would have standing to challenge the amendment.
We declined to find an exception to the rule of standing in Green v. Cox Cable of Omaha, Inc., 212 Neb. 915, 327 N.W.2d 603 (1982). In that case, two members of *355 the Omaha City Council sought a declaratory judgment to avoid the award of a cable television franchise. The council members alleged that the franchise exposed the city to liabilities, but did not allege any facts in support of the claimed liabilities. We concluded that cable television did not reach the level of great public concern described in Cunningham, supra, and affirmed the trial court's dismissal for lack of standing.
In Ritchhart v. Daub, 256 Neb. 801, 594 N.W.2d 288 (1999), an Omaha registered voter and taxpayer sued, complaining that the elected mayor's appointment of the police, fire, and communications chiefs violated the Omaha home rule charter. The district court overruled the defendant's demurrer on the issue of standing. It found that police, fire, and emergency communications were essential services and that any citizen should have the right to bring suit if such services were not being provided as required by law. However, the plaintiff did not allege or identify any interest in the outcome of the litigation that was not shared by all the residents of Omaha. Because the plaintiff's generalized injury was not a sufficient interest to entitle her to bring the action, we concluded that she did not have standing and dismissed the complaint. We stated that in disputes over essential services, the proper mechanism for procuring change was through the ballot box, and not through the courts.
In Neb. Against Exp. Gmblg. v. Neb. Horsemen's Assn., 258 Neb. 690, 605 N.W.2d 803 (2000), we held that a taxpayer and a nonprofit corporation organized to oppose the proliferation of gambling lacked standing to challenge the state racing commission's issuance of a license for simulcast of horse races. The alleged injury was not peculiar to the interests of the appellants, and there was no allegation of illegal expenditure of public funds or an increase in the burden of taxation. We determined that the appellants' stated interests in preventing the proliferation of gambling and having public officials act within their statutory boundaries were general interests common to all members of the public and did not rise to the level of great public concern required by Cunningham v. Exon, 202 Neb. 563, 276 N.W.2d 213 (1979).
In the instant case, Reed claims that harm to the natural resources and aesthetic beauty of the state will result from the failure of state actors to uphold their statutory duties. He argues that the harm is of paramount concern to the general public and is sufficient to qualify as a matter of great public concern for purposes of conferring subject matter jurisdiction. Reed asserts that because the State would technically be the only party with standing to bring the suit, the actions of the NGPC are immunized from judicial review. If standing is not conferred upon a member of the public, Reed claims the general public would not have the ability to ensure that Twin Lakes was being adequately safeguarded by those charged with its stewardship.
Exceptions to the rule of standing must be carefully applied in order to prevent the exceptions from swallowing the rule. Other than challenges to the unauthorized or illegal expenditure of public funds, our more recent cases have narrowed such exceptions to situations where matters of great public concern are involved and a legislative enactment may go unchallenged unless the plaintiff has the right to bring the action. See, Myers v. Nebraska Invest. Council, 272 Neb. 669, 724 N.W.2d 776 (2006); Neb. Against Exp. Gmblg., supra; Cunningham, supra.
Essentially, Reed seeks to impose upon NGPC his opinions regarding the administration *356 of the state's wildlife management areas. By law, NGPC is charged with this responsibility. See § 37-336. Reed's claim that NGPC has breached its duties does not give Reed the right to seek relief in the courts. Such concerns are better left to the policy decisions of the legislative and executive branches. Certainly, the public has a right to influence NGPC's policies regarding the administration of the state's wildlife management areas. However, the mechanism for doing so is through our representative form of government, and not through the courts. See Ritchhart v. Daub, 256 Neb. 801, 594 N.W.2d 288 (1999). Reed has not shown that he has standing to bring the action.

CONCLUSION
We conclude that Reed's concern does not rise to the level of great public concern that is necessary to qualify for an exception to standing requirements. The district court was correct in dismissing Reed's cause of action for lack of standing.
AFFIRMED.