**OPINION OF THE JUSTICES** of the Supreme Judicial Court Given Under the Provisions of Section 3 of Article VI of the Constitution.

Supreme Judicial Court of Maine.

Questions Propounded by His Excellency, Angus S. King, Jr., Governor of Maine in a Communication Dated Aug. 28, 1996.

Answered Sept. 4, 1996.

August 28, 1996

Chief Justice Wathen
Associate Justices of the Maine Supreme Judicial Court
205 Newbury Street
P.O. Box 368
Portland, ME 04112

To the Honorable Justices of the Supreme Judicial Court:

This requests the advice of the Justices of the Maine Supreme Judicial Court pursuant

to Article VI, § 3 of the Maine Constitution. I seek your advice upon the solemn occasion of the convening of a Special Session of the Legislature and upon the important question of law as to whether the legislation I will submit at that Session will require a simple majority or a 2/3 vote of the Legislature in order to refer the legislation as a competing measure to the people of Maine for vote at the November 5, 1996 general election.

My question arises out of the same set of Facts outlined in the request for Opinion of the Justices dated July 8, 1996. Based upon your advice outlined in the July 24, 1996 Opinion of the Justices, I have convened a Special Session of the Legislature on September 5, 1996 and will propose legislation to be submitted to the electors as a competing measure to earlier-referred citizen-initiated legislation. The question has arisen whether the measure must be approved by a two-thirds majority, instead of a simple majority of the Legislature in order to be submitted to the electors, given that the November 5, 1996 election would occur less than 90 days from the date of legislative approval. Some legislators have indicated an intent to request that the Senate or House seek an Opinion of the Justices on this matter at the time they convene in Special Session, recessing the Session until completion of this task by the Justices. This would entail not only considerable expense and delay for the Legislature, but also a compressed response time for the Justices.

The Attorney General of Maine has advised Senator Butland by Opinion dated August 13, 1996 that a simple majority is required for the Legislature to submit a competing measure to the citizen-initiated legislation (copy enclosed). I fully concur with the Attorney General's analysis. However, given the lack of precedent in this area, the importance of the constitutional provisions concerning direct democracy, and the potential for disruption of the orderly administration of the election process if the competing measure were to be challenged on this procedural ground, I am again seeking your advice in advance of the Special Session.

Therefore, I respectfully request your opinion on the following questions of law:

1. Is a ⅔ majority or a simple majority vote of the Legislature required to submit a bill as a competing measure to initiated legislation under Article IV, Part Third, Section 18(2) of the Maine Constitution, when the vote by the electors is scheduled to occur less than 90 days following legislative submittal?

2. If a ⅔ majority is required, is ⅔ determined by a vote of ⅔ of all the members elected to each House, or by ⅔ of those members present and voting?

I very much appreciate your guidance in this matter.

Sincerely,
/s/ Angus S. King, Jr.
Angus S. King
Governor, State of Maine

ANDREW KETTERER

ATTORNEY GENERAL

Telephone: (207) 626–8800

FAX: (207) 287–3145

STATE OF MAINE
DEPARTMENT OF THE ATTORNEY GENERAL
6 STATE HOUSE STATION
AUGUSTA, MAINE 04333–0006

August 13, 1996

The Honorable Jeffrey H. Butland
President, Maine Senate
3 State House Station
Augusta, Maine 04333–0003

Dear President Butland:

I am writing in response to your request of August 6, 1996 concerning whether, if the Legislature wishes to enact a competing measure to initiated legislation, it is required by the Constitution to do so by a two-thirds vote. Since the Legislature will be asked to enact a competing measure at an upcoming session in early September of this year, and since that session will be less than 90 days from the date of the general election in November at which the competing measure and the initiated measure would be placed before the voters, you ask whether the bill would have to be considered emergency legislation in order to be adopted in time to be put on

the November ballot. For the reasons which follow, it is the opinion of this Department that a competing measure need only be enacted by a simple majority.

The enactment of a competing measure to initiated legislation is governed by Article IV, Part Third, Section 18(2) of the Maine Constitution, which provides, in pertinent part:

> The [initiated] measure thus proposed, unless enacted without change by the Legislature at the session at which it is presented, shall be submitted to the electors together with any amended form, substitute, or recommendation of the Legislature, and in such manner that the people can choose between the competing measures or reject both.

There is no indication in this provision that the framers of the direct democracy provisions of the Maine Constitution intended that anything other than a simple majority be required for the enactment of a competing measure to initiated legislation by the Legislature. When the Constitution requires the Legislature to act by a two-thirds vote, it says so. See, *e.g.*, Me.Const. art. IV, pt. 3, § 2 (two-thirds vote required to override gubernatorial veto); art. IV, pt. 3, § 16 (two-thirds vote required for enactment of emergency legislation, cutting off the "people's veto"); art. IX, § 14 (two-thirds vote required for enactment of bond issue); art. X, § 4 (two-thirds vote required to propose amendments to the Constitution). Since there is no such provision in the constitutional provision dealing with the enactment of competing measures to initiated legislation quoted above, there is no requirement that a competing measure be enacted by a super majority.

This conclusion is not affected by the provisions of the Maine Constitution concerning emergency legislation, Article IV, Part Third, Section 16. The purpose of such legislation is to cut off the people's veto, provided for by Article IV, Part Third, Section 17, by making emergency legislation effective immediately upon approval by the Governor rather than 90 days after the recess of the legislative session which enacted it, a period provided to permit the electors to employ the procedures set out in section 17 for the people's veto. A competing measure to initiated legislation, which is authorized by an entirely different provision of the Constitution, is not effective immediately upon enactment and therefore is not affected by the procedure for emergency legislation.

I hope the foregoing answers your question.

Sincerely,

/s/ Andrew Ketterer

Andrew Ketterer
Attorney General

AK/tt

cc: Governor Angus S. King, Jr.
Speaker Dan A. Gwadosky

## ANSWER OF THE JUSTICES

To His Excellency, Angus S. King, Jr., Governor of Maine:

In compliance with the provisions of section 3 of article VI of the Constitution of Maine, we, the undersigned Justices of the Supreme Judicial Court, have the honor to submit the following response to the questions you propounded on August 28, 1996.

We must first determine "whether the case is one in which the law allows the opinions of the Justices to be given." *Opinion of the Justices*, 673 A.2d 1291, 1296 (Me. 1996). We are constitutionally permitted to provide an advisory opinion only "upon important questions of law, and upon solemn occasions ..." Me.Const. art. VI, § 3 (Supp. 1995). Advisory opinions provided by the individual justices pursuant to article VI, section 3 are not binding decisions of the Supreme Judicial Court sitting as the Law Court. "Even when the Justices are constitutionally empowered to render an advisory opinion, that opinion has no precedential value and no conclusive effect as a judgment upon any party, and is not binding upon even the individual Justices rendering it in any subsequent litigated matter before their Court." *Opinion of the Justices*, 396 A.2d 219, 223 (Me.1979). Such opinions are expressed "without the benefit of full factual development, oral argument, or full briefing by all interested parties." *Opinion of the Justices*, 673 A.2d 693, 695 (Me.1996).

You have convened a Special Session of the Legislature to begin on September 5, 1996, at which you will propose legislation to be submitted to the voters as a "true competing measure" to citizen-initiated legislation. The Special Session has been called based in part on the *Opinion of the Justices*, 680 A.2d 444 (Me.1996). That opinion answered the following question in the affirmative: "Does the Maine Legislature have the authority to enact a true 'competing measure' at a future Special Session and refer that competing measure for consideration by the electors in the November 1996 general election under Article IV, Part 3, § 18"? Because the validity of the proposed competing measure, if passed by a simple majority vote, has now been questioned, and because a challenge to the competing measure on such a procedural ground could disrupt the orderly administration of the referendum process, we agree that the question presented is important and that a solemn occasion exists as required by article VI, section 3.

Question 1 asks "Is a ⅔ majority or a simple majority vote of the Legislature required to submit a bill as a competing measure to initiated legislation under Article IV, Part Third, Section 18(2) of the Maine Constitution, when the vote by the electors is scheduled to occur less than 90 days following legislative submittal?"

We begin by noting that the *Opinion of the Justices*, 680 A.2d 444 (Me.1996), determined that a competing measure enacted at a special session would constitute a "true competing measure" within the meaning of section 18 of article IV, part 3 of the Maine Constitution.[1] The Opinion states:

Unless, therefore, legislative action at a special session directly or indirectly abridges the right of the people provided in section 18, we see no reason why the Legislature cannot consider a substitute measure. We are asked to assume that the legislative action would not interfere with the orderly printing and distribution of ballots. On that assumption, we fail to see any adverse effect on the free choice of the electorate.

*Opinion of the Justices*, 680 A.2d 444, 448 (Me.1996).

The issue now presented is whether the requirements of § 16 of art. IV, pt 3 of the Maine Constitution apply to the Legislature's adoption of a competing measure authorized by § 18 of art. IV, pt. 3 of the Maine Constitution. Section 16 provides that:

No Act or joint resolution of the Legislature, except such orders or resolutions as pertain solely to facilitating the performance of the business of the Legislature, of either branch, or of any committee or officer thereof, or appropriate money therefor or for the payment of salaries fixed by law, shall take effect until 90 days after the recess of the session of the Legislature in which it was passed, unless in case of emergency, which with the facts constituting the emergency shall be expressed in the preamble of the Act, the Legislature shall, by a vote of two thirds of all the members elected to each House, otherwise direct.

Me.Const. art. IV, pt. 3, § 16 (Supp.1995). An "act or resolve" within the meaning of section 16 will not take effect until 90 days after the close of the legislative session in which it was enacted unless the act or resolve qualifies as emergency legislation enacted by a two-thirds majority of both Houses.

We conclude that the legislative act of adopting or recommending a competing mea-

1. Me.Const. art. IV, pt. 3, § 18 (Supp.1995) provides in part: "Section 18. Direct initiative of legislation. 1. *Petition Procedure*. The electors may propose to the Legislature for its consideration any bill, resolve or resolution ..." Such a bill, resolve or resolution is referred to as an "initiated measure". Section 18 further provides: "2. *Referral to electors unless enacted by the Legislature without change*. ... The measure thus proposed, unless enacted without change by the Legislature at the session at which it is presented, shall be submitted to the electors together with any amended form, substitute, or recommendation of the Legislature, and in such manner that the people can choose between the competing measures or reject both ... If the measure initiated is enacted by the Legislature without change, it shall not go to a referendum vote unless in pursuance of a demand made in accordance with the preceding section. The Legislature may order a special election on any measure that is subject to a vote of the people."

sure is not an "act or resolve" within the meaning of section 16. We also determine that, once adopted by the Legislature, the submission to the voters is self-executing, and language directing the submission of a competing measure to the voters on a referendum ballot is not an "act or resolve" within the meaning of section 16. Therefore, section 16 does not apply. A simple majority vote of the Legislature is sufficient to recommend a bill as a competing measure to citizen-initiated legislation pursuant to section 18.

The Law Court addressed a similar issue in *Moulton v. Scully,* 111 Me. 428, 89 A. 944 (1914). In *Moulton* we determined that section 16 did not apply to a resolution calling for the removal of a sheriff by the governor. We analyzed the scope and purpose of sections 16 through 22 which were added in 1907 to part third of article IV by a constitutional amendment to establish the initiative and referendum process.[2]

> The purpose and scope of these amendments are obvious. The design was to have the legislative power not final but subject to the will of the people, a will to be called into exercise by the somewhat complicated machinery of the referendum ... [t]he central idea of the change was to confer the law making power in the last analysis upon the people themselves, a step from representative toward a democratic form of government ... [the amendments adding § 16–22 apply] only to legislation, to the making of laws, whether it be a public act, a private act or a resolve *having the force of law.*

*Id.* at 448, 89 A. at 953 (emphasis added). Thus, we concluded that section 16 applied only to an "act or joint resolution of the legislature having the force of law." Because the resolution for the removal of a sheriff did not "have the force of law," we concluded that the resolution became effective upon its adoption.

■ Likewise, the recommendation of a competing measure by the Legislature is not a legislative act "having the force of law." As a recommendation it becomes effective upon its adoption. It is not subject to Section 16's 90 day suspension or two-thirds vote requirement. The competing measure itself will "have the force of law" only *if it is* approved by the voters. "[A] bill enacted which is a substitute for the initiated measure must go to the electors with the initiated measure, and does not become a law until they approve it under the provisions of Sec. 18." *Farris ex rel. Dorsky v. Goss,* 143 Me. 227, 232, 60 A.2d 908, 911 (1948).

■ Once the competing measure has been adopted, no further legislative action is required to effect its submission to the voters. Section 18(2) provides that:

> The [citizen-initiated] measure thus proposed, unless enacted without change by the Legislature at the session at which it is presented, *shall* be submitted to the electors *together with* any amended form, substitute or recommendation of the Legislature and in such manner that the people can choose between the competing measures or reject both.

Me. Const. art. IV, pt. 3, § 18(2) (Supp.1995) (emphasis added). In *Farris* we held that the submission of initiative and competing measures to the voters pursuant to section 18 is a self-executing process. The submission is mandated by the Constitution and does not require legislative action. "[S]ection 18 is self-executing. The machinery for submission of the initiated bill and the substitute is the same; and in each case the same obligation is on the Secretary of State." *Farris* at 232, 60 A.2d at 911.[3]

Our conclusion is consistent with the language and purpose of the initiative and referendum amendments of 1907. These amendments, designed to subject the legislative power to the will of the people, reserved to the people two distinctly different powers: 1.

---

2. Maine Constitutional Amendment XXXI, 1907, c. 121, effective Jan. 6, 1909.

3. In *Farris* we held that the enactment of a bill which deals with the same general subject matter in a manner inconsistent with an initiative measure is a "substitute" or "recommendation" within the meaning of Section 18 and must be submitted to the voters as a competing measure. A writ of mandamus was issued to compel the Secretary of State to place the "Tabb Bill" on the ballot.

The citizen initiative: "power to propose laws and to enact or reject the same at the polls ...", and 2. The people's veto: "... power at their own option to approve or reject at the polls any act, bill, resolve or resolution by the joint action of both branches of the legislature." Me. Const. art. IV, pt. 1, § 1 (Supp. 1995). The citizen initiative power is enabled by section 18. The people's veto power is enabled by section 16, together with the procedure in section 17 for putting to referendum legislative acts or resolves which have not yet taken effect.[4]

The purpose of the 90 day suspension in section 16 is to allow time in which legislative acts or resolves may be subjected to the people's veto under section 17. The submission of citizen initiative and competing measures to the voters on a referendum ballot is a self-executing component of the citizen initiative power under section 18. It is not a legislative act subject to the people's veto power; it is not subject to a section 17 petition procedure, nor is it subject to the 90 day or two-thirds majority requirements of section 16.

Accordingly, we answer Question 1 in the negative and therefore find no need to address Question 2.

Dated: September 4, 1996

   DANIEL E. WATHEN
   Chief Justice
   DAVID G. ROBERTS
   CAROLINE D. GLASSMAN
   ROBERT W. CLIFFORD
   PAUL L. RUDMAN
   HOWARD H. DANA, Jr. *
   KERMIT V. LIPEZ
   Associate Justices

**4.** Me.Const. art. IV, pt. 3, § 17 (Supp.1995) provides in part: "Section 17. Proceeding for people's veto. 1. *Petition procedure.* Upon written petition of electors....requesting that one or more Acts, bills, resolves or resolutions, or part or parts thereof, passed by the Legislature but not then in effect by reason of the provisions of the preceding section, be referred to the people, such Acts, bills, resolves, or resolutions or part or parts thereof as are specified in such petition shall not take effect until 30 days after the Gover-

nor shall have announced by public proclamation that the same have been ratified by a majority of the electors voting thereon at a statewide election. 2. *Effect of referendum.* The effect of any Act, bill, resolve or resolution or part or parts thereof as are specified in such petition shall be suspended upon the filing of such petition...."

* Dana, J. did not participate.